**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 18 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROLANDO SAMANIEGO,

Defendant-Appellant.

No. 98-6152

---

Appeal from the United States District Court
for the W. District of Oklahoma
(D.C. No. CR-97-152-C)

---

**Submitted on the Briefs**

Patrick M. Ryan, United States Attorney, Oklahoma City, Oklahoma, and
Leslie M. Maye, Assistant U.S. Attorney, Oklahoma City, Oklahoma, for
Plaintiff-Appellee.

Michael G. Katz, Federal Public Defender, Denver, Colorado, and Jenine Jensen,
Assistant Public Defender, Denver, Colorado, for Defendant-Appellant.

---

Before **TACHA**, **McKAY**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

Rolando Samaniego was convicted in the United States District Court for the Western District of Oklahoma of 31 drug-related counts. His appeal is primarily addressed to the district court's admission of several summaries under Federal Rule of Evidence 1006 over his objection that the underlying documents constituted hearsay and the government failed to lay the foundation required for their admission. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **REVERSES**.

A district judge's decision to admit evidence is reviewed for an abuse of discretion. *See Harris Mkt. Research v. Marshall Mktg. & Communications, Inc.*, 948 F.2d 1518, 1525 (10th Cir. 1991). Because evidentiary rulings are within the sound discretion of the district court, this court will reverse only upon a "definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Gilbert v. Cosco, Inc.*, 989 F.2d 399, 402 (10th Cir. 1993) (quotation omitted). A district court abuses its discretion if its decision is based upon an error of law. *See United States v. Lin Lyn Trading, Ltd.*, 149 F.3d 1112, 1116 (10th Cir. 1998).

At trial, FBI agent Mark Seyler testified at length about his investigation of the drug-trafficking ring in which Samaniego was implicated. A significant part of Agent Seyler's testimony focused upon summaries he made of subpoenaed

telephone records.  None of the underlying telephone records were admitted into evidence.  The summaries, however, were received as government exhibits 900 through 906 over the objections of defense counsel.  Defense counsel objected to their use for several reasons, including the inadmissibility of the underlying documents as hearsay.

Rule 1006 states that summaries are permissible when voluminous evidence "cannot conveniently be examined in court," and when the evidence upon which the summary is based is made available to the other parties at a "reasonable time and place."  Fed. R. Evid. 1006.  The materials upon which the summary is based need not themselves be admitted into evidence.  *See* 6 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 1006.02 (Joseph M. McLaughlin, ed., 1999) [hereinafter Weinstein's Federal Evidence].  Admission of summaries, however, is conditioned on the requirement that the evidence upon which they are based, if not admitted, must be admissible.  *See*, *e.g.*, *Harris*, 948 F.2d at 1525 (holding that Rule 1006 "clearly permits the use of a summary of business records provided 'all of the records from which it is drawn are otherwise admissible'" (quoting *State Office Sys., Inc. v. Olivetti Corp. of Am.*, 762 F.2d 843, 845 (10th Cir.1985))); *Martin v. Funtime, Inc.*, 963 F.2d 110, 116 (6th Cir. 1992); Weinstein's Federal Evidence, § 1006.06[3].  A contrary result would inappropriately provide litigants with a means of avoiding rules governing the

admission of evidence such as hearsay. *See United States v. Johnson*, 594 F.2d 1253, 1255 (9th Cir. 1979) ("We do not believe that Congress intended that counsel could abrogate other restrictions on the admissibility—like the hearsay rule—by the use of summaries . . . .").

The telephone records from which the summaries were drawn are indubitably hearsay. The obligation of establishing the applicability of a hearsay exception for these records falls upon the government as the proponent of the evidence. *See, e.g.*, *United States v. Shirley*, 884 F.2d 1130, 1133 (9th Cir. 1989) (burden of proving admissibility of underlying materials is proponent's). The pertinent hearsay exception for business records, Federal Rule of Evidence 803(6), contains multiple foundational hurdles which must be cleared before the summaries may be admitted. *See United States v. Cestnik*, 36 F.3d 904, 909-10 (10th Cir. 1994). Rule 803(6) requires that the custodian or other qualified witness testify that (1) the records were made contemporaneously with the events and "kept in the course of a regularly conducted business activity," and (2) "it

was the regular practice of that business activity to make the [record]."[1] Fed. R. Evid. 803(6); *cf. United States v. Reilly*, 33 F.3d 1396, 1414 (3d Cir. 1994).

No effort whatsoever was made to establish the foundational requirements of Rule 803(6) for admissibility of the underlying telephone records. Even when faced with a hearsay objection, the government failed to sponsor a single witness or even ask a single question of any witness in order to lay a foundation for application of the business records exception. The district court made an error of law by not requiring the government to lay the requisite foundation or forgo the use of the summaries, and thus abused its discretion in admitting the summaries. *See Timberlake Constr. Co. v. U.S. Fidelity & Guar. Co.*, 71 F.3d 335, 341-42 (10th Cir. 1995) (admission of documents not comporting with 803(6) foundational requirements was error).

---

[1] In certain circumstances, a foundation for admissibility can be established by judicial notice of the nature of the business and "the nature of the records *as observed by the court*, particularly in the case of bank and similar statements." *United States v. Johnson*, 971 F.2d 562, 571 (10th Cir. 1992) (emphasis added) (quotation omitted). Unlike *Johnson*, the record here is not "replete with circumstances demonstrating the trustworthiness of the documents." *Id*. None of the underlying documents was ever admitted; there is no indication that the district judge ever saw them; and the record fails to justify their inclusion in the class of records commonly viewed as particularly trustworthy, such as bank records. Finally, consistent with the government failing to even acknowledge the existence of a hearsay issue, *see infra*, the government has at no time suggested judicial notice as a means to satisfy the foundational requirements.

Such error, however, does not necessarily end the appellate inquiry. Federal Rule of Criminal Procedure 52(a) provides that an error "which does not affect substantial rights shall be disregarded." Fed. R. Crim. P. 52(a); *see also United States v. Charley*, 1999 WL 285879, at * 14-16 (10th Cir. May 7, 1999) (inquiring into whether the error had a "substantial influence" on the verdict or whether the court is left in "grave doubt" as to whether the evidence had such an effect (quoting *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990) (en banc))). Although the government makes no assertion whatsoever that the admission of these summaries without adequate foundation was harmless error, this court may in its discretion "initiate harmless error review in an appropriate case." *United States v. Torrez-Ortega*, Nos. 97-8094, -8095, -8096, 1999 WL 446008, *5 (10th Cir. July 1, 1999) (quotation omitted). In *Torrez-Ortega*, this court cited with approval three factors suggested by the Seventh Circuit in determining whether an appellate court should address harmlessness when the government has failed to do so: (1) the length and complexity of the record; (2) whether the harmlessness of the errors is certain or debatable; and (3) whether a reversal would result in protracted, costly, and futile proceedings in the district

court.[2] *See id.* (citing *United States v. Giovannetti*, 928 F.2d 225, 227 (7th Cir. 1991)).

The 2,350 page record, over half of which constitutes trial transcript from a six-day jury trial, is lengthy. The length of the record is equaled or exceeded by its complexity. Samaniego and his co-defendant were indicted on over 70 counts, all addressed to their alleged participation in a several-dozen member multi-state conspiracy to distribute several tons of marijuana. Thirty of Samaniego's thirty-one convictions involve discrete and specific transactions with many different co-conspirators, each requiring separate proof.[3] The record itself is abysmally

---

[2] It is unclear what the third factor contributes to a court's decision in determining whether to exercise its discretion to *sua sponte* address the issue of harmlessness. Without eviscerating the doctrine, cost and potentially protracted proceedings cannot preclude reversal if an error was not harmless. Moreover, a court could conclude that reversal would be futile only by undertaking the very harmless error review it seeks to ascertain whether it should conduct. Additionally, it is difficult to imagine how a court could conclude that reversal would be futile if it has already concluded under the second *Giovannetti* factor that the harmlessness of the error is not certain. Perhaps confusion about what the third factor contributes to the analysis has caused this and other courts to merely reference but not apply it. *See United States v. Torrez-Ortega*, Nos. 97-8094, -8095, -8096, 1999 WL 446008, *6 (10th Cir. July 1, 1999); *United States v. Pryce*, 938 F.2d 1343, 1348 n.4 (D.C. Cir. 1991) (Williams, J., separate opinion) (citing *Giovannetti* favorably but stating that "[t]he role of the third factor is unclear"); *see also United States v. McLaughlin*, 126 F.3d 130, 135 (3rd Cir. 1997) (even though reversal would be "costly," the complexity of the record and the uncertainty of the harm warranted vacating conviction). Nevertheless, depending upon the facts, the third factor may simply be irrelevant in cases such as this.

[3] Samaniego was also convicted on conspiracy to possess with intent to distribute marijuana from 1994 to 1997, in violation of 21 U.S.C. § 841(a)(1).

inadequate for a harmless-error review. For example, the sole exhibits in the record are the summaries, constituting only 8 of the over 100 exhibits admitted during trial. As a consequence, significant documentary evidence, such as the purportedly consistent travel documents, is missing.

The summaries did not play a small role in the trial. Reference to the summaries is woven throughout the fabric of the government's closing. The government related the telephone activity in the summaries to travel records, which are not part of the record to review for harmless error, and the testimony of accomplices who had pleaded guilty and whose character was acknowledged by the prosecutor in closing to be questionable.

An unsolicited, unassisted, and undirected harmless-error review of an incomplete record to search for and evaluate independent evidence to support Samaniego's thirty-one separate convictions would be lengthy, complex, and dangerous. Furthermore, while the government's brief lists the requirements of Rule 1006, it never even addresses the error in this case, i.e., the failure to establish the admissibility of the underlying telephone records. The government compounds its default by failing to even *suggest* that the error was harmless, even in the face of the defendant's preemptive argument in his opening brief that the error was not harmless. This silence on the issue of harmlessness and the failure to provide an adequate record to review suggests acquiescence in reversal. *See*

*Giovannetti*, 928 F.2d at 226 (stating that government's failure to address harmlessness when defendant had discussed issue in opening brief suggested that the government acquiesced that any error was prejudicial).

In light of the length and complexity of proceedings, the apparent prominence of the erroneously admitted summaries, and the government's complete and inexplicable failure to address the issue and provide this court with guidance or even a record, this court declines to exercise its jurisdiction to review the harmlessness of the erroneously admitted summaries. The judgement of the United States District Court for the Western District of Oklahoma is **REVERSED** and this matter is **REMANDED**.

**98-6152, US v. Samaniego**

**Tacha, J., dissenting**

I respectfully dissent. While I agree with the majority that the district court improperly admitted the telephone record summaries, I am convinced that we should apply a harmless error analysis. The majority correctly notes that we may initiate harmless error review sua sponte, despite the government's failure to raise this argument. Even in complicated drug cases like this one, it is incumbent upon us to scrutinize the record to determine whether harmless error analysis is appropriate. In my mind, this is an appropriate case for harmless error review because the record contains overwhelming evidence that the defendant, Rolando Samaniego, actively participated in a marijuana importation and distribution conspiracy over a period of years from 1994 to early 1997.

An erroneous evidentiary ruling is considered harmless unless it affects a substantial right of a party. See United States v. Charley, 176 F.3d 1265, 1282 (10th Cir. 1999) (citing Fed. R. Evid. 103(a)). An error affecting a substantial right must have had a "substantial influence on the outcome or . . . leave[] one in grave doubt as to whether it had such effect." Id. (internal quotation marks and citation omitted).

The government charged Samaniego with one count of conspiracy in violation of 21 U.S.C. § 846, thirteen counts of traveling or using a facility in interstate commerce to facilitate an unlawful activity, 18 U.S.C. § 1952(a)(3), and seventeen counts of possession of a controlled substance with intent to distribute, 21 U.S.C. § 841(a)(1). The majority

focuses on the thirty specific counts, asserting that the telephone records are potentially essential evidence for proving these offenses. However, the government presented at least seven witnesses who had direct and sustained contact with defendant in his capacity as a leader in the drug conspiracy. Maria Valle testified how Samaniego used her house in Oklahoma City to store and distribute thousands of pounds of marijuana brought up from Mexico in 1994. Gerardo Gutierrez-Moreno explained how Samaniego solicited him to drive drug shipments from near El Paso, Texas, to Oklahoma City and how he delivered those shipments to Samaniego in Oklahoma City. James Lee Pleskac, Pete Ford, and Gerald Chillas admitted to driving shipments from Texas to Oklahoma City as a part of the operation, and Pleskac and Ford testified that Samaniego was a part of the conspiracy. Jeff Mosby was hired by defendant to help transport marijuana, and he personally witnessed defendant weighing, sorting, and distributing hundreds of pounds of marijuana. The defendant also used Mosby's house to store his drug shipments in 1995, after Maria Valle's house was no longer available. Matthew Fernandez testified about buying marijuana from defendant from 1994 to 1996. Finally, Drug Enforcement Administration ("DEA") Special Agent Timothy Jones testified that in September of 1994, he brought a shipment to defendant in Oklahoma City while serving in an undercover capacity.

Almost all of these witnesses put Rolando Samaniego at the center of a drug conspiracy that brought tons of marijuana from Mexico to Texas and then to Oklahoma

City. Many of them corroborated each other's testimony in important ways. For example, several of them brought shipments to Samaniego at Maria Valle's house. This direct witness testimony provided extremely strong proof of defendant's criminal activity. The conspiracy charge, at the very least, has overwhelming support in the record. "To obtain a conviction for conspiracy the government must show [1] that two or more persons agreed to violate the law, [2] that the Defendant knew at least the essential objectives of the conspiracy, . . . [3] that the Defendant knowingly and voluntarily became a part of it, and [4] that the alleged coconspirators were interdependent." United States v. Ivy, 83 F.3d 1266, 1285 (10th Cir. 1996) (internal quotation marks and citations omitted). The government more than met this burden with only the above-mentioned testimony. In light of this evidence, the admission of the disputed telephone record summaries could not have had a substantial influence on the outcome of the case with respect to the conspiracy charge and several of the individual charges. Cf. United States v. Wilson, 134 F.3d 855, 867 (7th Cir.) (exercising discretion and finding harmless error in drug conspiracy conviction where government presented overwhelming evidence against defendant at trial), cert. denied, 119 S. Ct. 216 (1998); Lufkins v. Leapley, 965 F.2d 1477, 1482 (8th Cir. 1992) (exercising discretion and finding harmless error where record in procedurally complicated case consisted only of the trial transcript, which included a confession and corroborating evidence).

Additionally, I am compelled to comment on the factors discussed by the majority in determining whether to apply a harmless error analysis. As the majority points out, this Circuit recently cited with approval United States v. Giovannetti, 928 F.2d 225, 227 (7th Cir. 1991), in which the Seventh Circuit enunciated three factors to guide a court in determining whether to conduct a harmless error analysis when the government waives the issue. See United States v. Torrez-Ortega,__F.3d__, 1999 WL 446008, at *5-6 (10th Cir. July 1, 1999). Those factors are the length and complexity of the record, the certainty of the harmlessness, and the cost and futility of proceedings in the event of a reversal. I agree with the majority that the third Giovannetti factor does not assist in the analysis of whether to exercise our discretion. See Majority Op. at n.2. I further doubt the utility of the first factor. I am especially concerned that a court facing a large record might rely heavily or exclusively on the first factor in refusing to exercise discretion to apply harmless error. In my judgment, an appellate court cannot be excused from its duty to study a record, even in exercising the broadest scope of its discretionary review, just because a record is lengthy and/or complicated. The scope of a record does not excuse the appellate court from reviewing it and attempting to determine whether harmless error analysis is appropriate. Indeed, I fail to see how we could ever make a rational judgment on the second factor -- whether the harmlessness of the error is certain or debatable --

without scrutinizing for ourselves the full record, regardless of its length or complexity.[4]
The complexity of a record should not by itself play a part in our analysis. Rather, a complex record *might* be a factor that impacts our certainty of the harmlessness of the error.

Thus, I look only to the second factor -- whether the harmlessness of the error is certain or debatable. This, it seems to me, is the crux of harmless error review and the touchstone for our analysis. If harmlessness is debatable, it is hard to conclude that the error is harmless or, in this context, that the court should exercise its discretionary prerogative to undertake a formal harmless error review. If, however, on the record before the court, the harmlessness is certain, the appellate court should be much more willing to exercise its discretion and engage in a thorough harmless error analysis.

When the government fails to argue harmless error on appeal, I hold the firm view that our appellate review responsibility requires us to carefully examine the record before us and decide whether to exercise our discretion to employ harmless error review based not on the scope of the record, but on the level of our certainty that the error was

---

[4]The court in <u>Torrez-Ortega</u> demonstrates this point. The court first notes the extensive nature of the record and then explains that the harmlessness of admitting testimony in violation of the Confrontation Clause was "at best debateable." <u>Torrez-Ortega</u>, 1999 WL 446008, at *6. It then concluded, "Our independent review of *the full record* does not readily persuade us that the error is harmless . . . ." <u>Id.</u> (emphasis added). Thus, the court had to review the entire record, even though it was large and complex, in order to determine whether to invoke its discretion to apply harmless error review.

harmless. Based on my review of this record, I am sufficiently certain that the error in admitting the telephone summaries was harmless with respect to at least some of the convictions that I would exercise our discretion to conduct a harmless error analysis. I therefore respectfully dissent.