**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**JAN 30 2002**

**PATRICK FISHER**
**Clerk**

WALTER W. WEIBLER, doing
business as W Cubed Manufacturing
& Engineering,

Plaintiff-Appellant,

v.

UNIVERSAL TECHNOLOGIES,
INC.; JESSE ROGERS,

Defendants-Appellees.

No. 00-1374
(D.C. No. 96-S-2548)
(D. Colo.)

**ORDER AND JUDGMENT** *

Before **EBEL** , **KELLY** , and **LUCERO** , Circuit Judges.

Walter Weibler, doing business as W Cubed Manufacturing & Engineering

("W Cubed"), sued Universal Technologies, Inc. ("UTI") and its president, Jesse

Rogers, for misappropriation of trade secrets, unjust enrichment, negligent

---

* The case is unanimously ordered submitted without oral argument
pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and
judgment is not binding precedent, except under the doctrines of law of the case,
res judicata, and collateral estoppel. The Court generally disfavors the citation of
orders and judgments; nevertheless, an order and judgment may be cited under the
terms and conditions of 10th Cir. R. 36.3.

misrepresentation, fraud, and promissory estoppel. The United States District Court for the District of Colorado held a bench trial on the misappropriation of trade secrets claims, ruled that UTI had misappropriated Weibler's trade secrets,[1] and awarded Weibler damages in the amount of $111,180. Weibler appeals the district court's refusal to award attorney's fees and its method of calculating damages. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I

Weibler contracted with UTI to manufacture heat exchangers, an integral part of a plastic waste processor that UTI supplied to the United States Navy ("Navy") under a July 1995 contract.[2] The initial contract between UTI and the Navy required UTI to purchase the heat exchangers from Tranter, a Georgia-based manufacturer, whose patented titanium heat exchanger cost approximately $3,400 per unit. UTI thought that the Tranter price was too high and asked the Navy to amend its specifications to allow for other heat exchanger suppliers. In

---

[1] Summary judgment was granted on behalf of UTI on the unjust enrichment claim in October 1998, and the misappropriation of trade secrets claims against two UTI employees were dismissed with prejudice in September 1998. Appellant voluntarily dismissed his negligent misrepresentation and promissory estoppel claims at the conclusion of the presentation of his evidence at trial. At the same time, appellant decided to pursue his misappropriation of trade secret claims against UTI and Rogers rather than his fraud claims, and as a result the fraud claims were dismissed.

[2] Within the plastic waste processor the heat exchanger transfers heat from hot water, generated by the melting process, into cold sea water.

November of 1995, the Navy agreed to permit UTI to purchase the heat exchangers from any manufacturer that could make the product within the Navy's test parameters.

In its search for a qualified manufacturer, UTI located Weibler. UTI gave Weibler the Navy specifications and a drawing UTI had created of a "reverse-engineered" Tranter heat exchanger.[3] As they began working together, Weibler told Rogers that Weibler's ideas were to be kept secret. Rogers agreed and told Weibler that UTI had no intention of building heat exchangers.

The parties initially agreed to have Weibler manufacture the entire heat exchanger. However that agreement was later modified such that Weibler was to build the interior component of the heat exchanger and UTI would build the exterior component. Weibler never furnished UTI with any drawings of his interior component or instructions as to how the exterior component was to be manufactured.

In June 1996, a UTI employee, Quentin Horton, created shop drawings of the heat exchanger Weibler and UTI were developing. As the development process continued, Rogers periodically directed Horton to amend the drawings. UTI subsequently manufactured and shipped its own heat exchangers based on

---

[3] UTI had dismantled a Tranter heat exchanger in order to understand the construction and method of operation of this particular type of titanium heat exchanger.

these shop drawings because Weibler failed to develop an interior      component for the heat exchangers able to meet the Navy's test parameters.

Based on the record evidence, exhibits, and testimony of the parties, the district court held that UTI had misappropriated Weibler's trade secrets. The district court did not award attorney's fees because it found that UTI's misappropriation of Weibler's trade secrets was not willful and malicious as required by the Colorado Uniform Trade Secrets Act. Finally, the court concluded that a reasonable royalty was the appropriate method for measuring damages. The court calculated this reasonable royalty as a fair price for licensing UTI and Rogers to make use of the trade secrets in the manner they intended at the time of the misappropriation. This calculation awarded Weibler the cost of the Tranter heat exchanger ($3,400 per unit), multiplied by a profit of 15 percent, multiplied by the number of exchangers delivered to the Navy by UTI before the date of Weibler's October 1998 patent (218 exchangers).[4]  The total damage award was $111,180.

Weibler filed post-trial motions arguing that he was entitled to attorney's fees and damages based on a disgorgement of profits theory. The district court

_____

[4] Weibler applied for a patent on a heat exchanger device and the method of making it in August 1996   . The initial patent application was rejected in December of 1997. Weibler's amended application was rejected in April of 1998, after which he withdrew certain claims and amended others. He was issued a patent on the remaining twice-amended claims in October of 1998.

rejected Weibler's arguments, and Weibler now appeals.

## II

Appellant presents two issues for review by this Court. He first contends that the district court erred in failing to award him attorney's fees as authorized by the Colorado Uniform Trade Secrets Act. Colo. Rev. Stat. § 7-74-105. He also argues that the trial court erred in refusing to grant disgorgement of profits as damages for appellees' misappropriation of his trade secrets.

## A

This court reviews the district court's award of attorney's fees for an abuse of discretion. Griffin v. Steeltek, Inc., 261 F.3d 1026, 1028 (10th Cir. 2001). A court abuses its discretion when it bases its decision on an erroneous conclusion of law or when there is no rational basis in the evidence for the ruling. Mann v. Reynolds, 46 F.3d 1055, 1062 (10th Cir. 1995). The underlying factual findings are reviewed for clear error. Lancaster v. Indep. Sch. Dist. No. 5, 149 F.3d 1228, 1237 (10th Cir. 1998). "A finding of fact is 'clearly erroneous' if it is without factual support in the record or if the appellate court, after reviewing all the evidence, is left with a definite and firm conviction that a mistake has been made." Cowles v. Dow Keith Oil & Gas, Inc., 752 F.2d 508, 511 (10th Cir. 1985) (citation omitted).

Weibler claims the district court erred in refusing to grant him attorney's

fees because the evidence showed that UTI's actions were willful and malicious as required by the Colorado Uniform Trade Secrets Act. Section 7-74-105 of this Act states that if "willful and malicious misappropriation exists, the court may award reasonable attorney fees to the prevailing party."

The district court found that appellees' misappropriation was not willful and malicious. Finding that appellees' misappropriation began "with innocent acts such as UTI creating shop drawings of the heat exchangers because Weibler would not provide the necessary drawings," the court concluded that there was no "element of meaningful control and deliberate action which is normally associated with willful acts." (Appellees' Br., Tab B at 2.) The court also found that appellees' behavior was not malicious, concluding that Rogers's statement to Weibler at the beginning of their relationship—that UTI had no interest in making heat exchangers—was truthful and that later developments, including Weibler's conduct, caused UTI to reevaluate that position. The record supports these factual findings and we conclude that the district court's factual findings are not clearly erroneous.

The district court can only award attorney's fees if it determines that the misappropriation was willful and malicious. Colo. Rev. Stat. § 7-74-105. Because the district court properly found that appellees' misappropriation was not willful and malicious, it had no grounds for awarding attorney's fees and did not

abuse its discretion in refusing to do so.

**B**

Weibler also argues that the trial court erred in refusing to grant disgorgement of profits as damages for appellees' misappropriation of his trade secrets. Federal appellate courts apply the trade secrets law of the appropriate state in assessing the trial court's damage award. See Roton Barrier, Inc. v. Stanley Works, 79 F.3d 1112, 1116 (Fed. Cir. 1996). In this case, we apply the trade secrets law of Colorado. Under Colorado law, "[t]he factfinder has the sole prerogative to assess the amount of damages, and its award will not be set aside unless it is manifestly and clearly erroneous." Sonoco Prods. Co. v. Johnson, 23 P.3d 1287, 1289 (Colo. Ct. App. 2001).

Under the Colorado Uniform Trade Secrets Act, the fact finder has discretion in choosing the appropriate measure of damages:

> Damages may include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

Colo. Rev. Stat. § 7-74-104.

The district court used Exhibit 80, a document explaining UTI's costs for manufacturing the heat exchangers, to determine that UTI received no profits from the manufacture of the heat exchangers. The lack of profits thus made disgorgement of profits an inappropriate measure of damages. As the district court stated:

> The evidence presented at trial established that Defendants did not receive any profits from the manufacture of heat exchangers. Defendants' Exhibit 80 sets forth the costs expended by Defendants to manufacture the heat exchangers ultimately supplied to the Navy in fulfillment of the contract. Application of those amounts would result in a negative damage figure if disgorgement of profits was used. Consequently, there is no evidence to support this measure of damages for Plaintiff.

(Appellees' Br., Tab A at 10.)

Weibler challenges the court's use of Exhibit 80 arguing that it was offered without foundation, was inadmissible hearsay, and did not adhere to the Federal Rule of Evidence 1006 requirements for a summary of financial data. We review the district court's decision to admit evidence for abuse of discretion. United States v. Samaniego, 187 F.3d 1222, 1223 (10th Cir. 1999). We will reverse evidentiary rulings only when the party timely objected and the error has affected a party's substantial rights, unless the error constitutes plain error. See Fed. R. Evid. 103(a)(1); United States v. Mendoza-Salgado, 964 F.2d 993, 1008 (10th Cir. 1992).

-8-

The timely objection must state the specific grounds for the objection if the specific ground was not apparent from the context.    See Fed. R. Evid. 103(a)(1);  Mendoza-Salgado  , 964 F.2d at 1008.  In this case, Weibler first objected to testimony concerning Exhibit 80 on the grounds that it had not been offered as an exhibit and there was "no foundation that [defendant Rogers] knows the numbers or . . . created them."  (Appellant's App. at 329.)  After appellees' counsel questioned Rogers further, Weibler said simply, "I object." (Id. at 330.)  Appellees' counsel continued to question Rogers and then moved to admit Exhibit 80 again.  This time Weibler did not object.  (    Id. at 331.)

Assuming Weibler properly preserved his foundation objection, he has not established that the district court abused its discretion in admitting Exhibit 80. Rogers established that he was familiar with the information in Exhibit 80 and that it had been prepared under his supervision by UTI's regular accounting staff. (Appellees' Br. at 34; Appellees' App. at 389.)  The district court had a rational basis in the evidence for admitting Exhibit 80 and we conclude that the district court did not abuse its discretion in doing so.

During the trial, Weibler only objected to Exhibit 80 on foundation grounds.  It was not until his post-judgment motion that Weibler argued that Exhibit 80 was improper hearsay, the underlying records were never produced, and Exhibit 80  was not a business record.  (    Id. at 114-18.)  Because Weibler

failed to state these specific grounds for the objection at the time Exhibit 80 was offered as evidence and they were not apparent from the context, they cannot serve as the basis for a timely objection to the introduction of Exhibit 80 and we will not reverse the district court's evidentiary ruling.    Finally, Weibler does not suggest that the district court's admission of Exhibit 80 constitutes plain error, nor do we find there to be "plain error resulting in manifest injustice."    See United States v. Taylor  , 800 F.2d 1012, 1017 (10th Cir. 1986).

Because we find no error in the district court's admission of Exhibit 80 we hold that the district court's damage award is not clearly erroneous. Accordingly, the judgment is **AFFIRMED**.


ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge