EBEL, Circuit Judge,
concurring.
I agree with both of my respected panel members that Mr. Sanchez-Gallegos’ conviction should be affirmed. However, I part ways with the majority in its conclusion that Mr. Sanchez-Gallegos was not in custody when he made his initial incriminating statement to Border Patrol Agent Gonzalez. In my view, Mr. Sanchez-Gallegos was in custody at that point, and it was incumbent upon the agents to warn him of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to that interrogation. However, I believe that the officers’ administration of the Miranda warning after that initial statement was sufficient to advise Mr. Sanchez-Gallegos of his rights, and to render the statements made after the warning — the vast bulk of the statements that led to Mr. Sanchez-Gallegos’ arrest— admissible. Thus, I believe that while the admission of the single pre-Miranda statement was erroneous, the error was in fact harmless. Accordingly, I agree that Mr. Sanchez-Gallegos’ conviction should be affirmed.
I. Mr. Sanchez-Gallegos Was In Custody at the Time of His Initial Statement
The majority is correct that “a routine stop at a fixed border checkpoint, i.e., a stop within the parameters set forth by this court in [United States v. Massie, 65 F.3d 843 (10th Cir.1995)], is not custodial and Miranda warnings are not necessary.” United States v. Hudson, 210 F.3d 1184, 1191 (10th Cir.2000). In Massie, we held that “during a routine fixed-checkpoint stop a border patrol agent may ask questions reasonably related to his duties and explore suspicious circumstances, but must be brief and unintrusive.” 65 F.3d at 848 (emphasis added). In that case, we determined that border patrol agents’ detention and questioning of defendants were sufficiently brief and unintrusive so as not to exceed the confines of a routine checkpoint stop where the “agents’ questioning lasted only eight to eleven minutes from the time Defendants were stopped at [the] primary [inspection area] to the moment the dog alerted on the trunk,” and where “[t]he agents questioned Defendants about citizenship, vehicle ownership, vehicle contents, destination, and travel plans.” Id. at 849.
I agree with Chief Judge Briscoe’s opinion that the facts of this case “take it outside of the Massie heartland.” Hudson, 210 F.3d at 1191. First, Mr. Sanchez-Gallegos had been detained for approximately forty to fifty minutes before Agent Gonzalez asked the questions that elicited Mr. Sanchez-Gallegos’ initial incriminating statement. Second, although *70 consensual, Mr. Sanchez-Gallegos was directed to a secondary checkpoint, subjected to a canine sniff of his vehicle, and patted down. The interior of his vehicle was then searched by border patrol agents and he was questioned in a secondary checkpoint office. In addition, Agent Gonzalez’s questions that elicited Mr. Sanchez-Gallegos’ testimony were anything but un-intrusive. As Agent Gonzalez testified at the suppression hearing:
I asked him about all the inconsistencies that we had found, and I told him about the fact that he had lied to me about the travel plans, that he had told me he was a U.S. citizen, that he had all this money that he couldn’t explain to me how he got it, and that he had some birth certificates for children. I told him that I believed there was a group of children walking around the checkpoint and that my concern was that, if they were, they could be exposed to the elements and maybe, as I have seen before, die in the desert.
R., vol. Ill at 28. Under these circumstances, the detention and questioning of Mr. Sanchez-Gallegos exceeded the parameters set forth in Massie.
Chief Judge Briscoe nonetheless concludes that Mr. Sanchez-Gallegos was not in custody for the purposes of Miranda under the totality of circumstances presented here. To determine whether a suspect is in custody for the purposes of Miranda, we “must decide whether a reasonable person in [the suspect’s] position would have understood [his] freedom of action to have been restricted to a degree consistent with formal arrest.” United States v. Revels, 510 F.3d 1269, 1275 (10th Cir.2007). “Several relevant factors inform our fact-specific analysis, including: (1) whether the circumstances demonstrated a police-dominated atmosphere; (2) whether the nature and length of the officers’ questioning was accusatory or coercive; and (3) whether the police made [the suspect] aware that [he] was free to refrain from answering questions, or to otherwise end the interview.” Id. I believe that this analysis inevitably leads to the conclusion that Mr. Sanchez-Gallegos was in custody.
First, the circumstances demonstrate a police-dominated atmosphere. Mr. Sanchez-Gallegos was removed from his vehicle, taken to a separate checkpoint office, and interrogated in the presence of two border patrol agents, while two other agents searched his vehicle. Chief Judge Briscoe believes that this does not suffice to create a police-dominated atmosphere because (1) Mr. Sanchez-Gallegos was directed to the secondary checkpoint office during the search of his vehicle and only after he submitted to a consensual pat-down search, and (2) only two border patrol agents were present during the initial interrogation. I respectfully disagree. First, as Judge Holmes recognizes, the search of Mr. Sanchez-Gallegos’ vehicle was completed before he was subjected to the interrogation that elicited his incriminating statement. Second, it is unclear why two border patrol agents questioning Mr. Sanchez-Gallegos alone in a border checkpoint office is insufficient to constitute a police-dominated atmosphere. Moreover, more than two agents were present at the checkpoint, as at least two others searched Mr. Sanchez-Gallegos’ vehicle. Therefore, I find that this factor supports a conclusion that Mr. Sanchez-Gallegos was in custody at the time of the interrogation.
The second factor — whether the nature and length of the officers’ questioning was accusatory or coercive — is a closer call. On the one hand, I think it is an inescapable conclusion that the agents’ questioning was accusatory. Agent Gonzales not only accused Mr. Sanchez-Gallegos of lying and giving inconsistent statements, but *71 Gonzales showed Mr. Sanchez-Gallegos the birth certificates and told him that a group of children “could be exposed to the elements and maybe, as I have seen before, die in the desert.” R., vol. Ill at 28. I fail to see how such questioning is not plainly accusatory.
On the other hand, as my respected panel members point out, Mr. Sanchez-Gallegos was not subjected to or threatened with any physical mistreatment, was not placed in handcuffs or a holding cell, and was not questioned for a long period of time before the Miranda warning was given. Under these circumstances, the agent’s questioning, while accusatory, did not rise to the level of coercion. Compare United States v. Eckhart, 569 F.3d 1263, 1276 (10th Cir.2009) (finding stop to be noncoercive where defendant “was never handcuffed or placed in a police cruiser and no weapons were drawn” and “the officers were polite in their demeanor and did not use or threaten the use of force at any time”), United States v. Lamy, 521 F.3d 1257, 1263 (10th Cir.2008) (finding second factor not met where “the interview lasted for about an hour and ... there was no indication that the questioning was unusually confrontational”), and United States v. Bennett, 329 F.3d 769, 775 (10th Cir.2003) (finding that coercive factors were not present where police did not restrain the defendant while questioning him and told him he was not under arrest), with United States v. Perdue, 8 F.3d 1455, 1464, 1467 (10th Cir.1993) (finding “overwhelmingly” coercive atmosphere where defendant “was forced out of his car and onto the ground at gunpoint” and then questioned by officers “while police helicopters hovered above” and “while the officers kept their guns drawn on him and his pregnant fiancée”). Accordingly, this factor cuts both ways in the analysis.
Finally, as the majority acknowledges, Mr. Sanchez-Gallegos was never informed by the agents that he was free to end the interview. This weighs significantly in favor of finding custodial interrogation in this case. See Revels, 510 F.3d at 1276 (finding that the suspect was in custody for Miranda purposes where “the police never indicated to [the suspect] that she was free to leave or otherwise at liberty to terminate the police questioning”); United States v. Griffin, 7 F.3d 1512, 1518 (10th Cir.1993) (“[T]he lack of a police advisement that the suspect is at liberty to decline to answer questions or free to leave is a significant indication of a custodial detention.”).
Under the totality of the circumstances described above, I conclude that Mr. Sanchez-Gallegos was in custody when he was questioned by Agent Gonzalez, and therefore that the failure to give Mr. Sanchez-Gallegos a Miranda warning rendered his initial statement inadmissible. However, I do not believe that this error warrants reversal. As discussed below, the subsequent Miranda warning given to Mr. Sanchez-Gallegos was effective to render his later statements admissible, and thus the district court’s admission of Mr. Sanchez-Gallegos’ pre-Miranda statement was harmless.
II. The District Court Did Not Err in Admitting Mr. Sanchez-Gallegos’ Post-Miranda Statements.
After Mr. Sanchez-Gallegos made the initial incriminating statement, Agent Gonzalez read Mr. Sanchez-Gallegos his Miranda rights and Mr. Sanchez-Gallegos waived his right to remain silent. He then proceeded to confess to involvement with the crime, and even went so far as to call Victor so that ICE agents could find the children. The question, then, becomes whether the Miranda warning given after the incriminating statement sufficed to render the post-warning statements admissible, notwithstanding the prior violation of Mr. Sanchez-Gallegos’ Miranda rights.
*72 In Missouri v. Seibert, the Supreme Court in a fragmented opinion found that a Miranda warning given mid-interrogation pursuant to a “question-first tactic” was insufficient to render the defendant’s later statements admissible. 542 U.S. 600, 617, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004). The four-justice plurality set forth the following five “relevant facts that bear on whether Miranda warnings delivered midstream could be effective”:
[ 1 ] the completeness and detail of the questions and answers in the first round of interrogation, [2] the overlapping content of the two statements, [3] the timing and setting of the first and the second, [4] the continuity of police personnel, and [5] the degree to which the interrogator’s questions treated the second round as continuous with the first.
Id. at 615, 124 S.Ct. 2601.
In a concurring opinion, however, Justice Kennedy argued for “a much narrower test applicable only to the infrequent case ... in which the two-step interrogation technique was used in a calculated way to undermine the Miranda warning.” Id. at 622, 124 S.Ct. 2601 (Kennedy, J., concurring in the judgment). Where a two-step interrogation technique was not so used, Justice Kennedy believed that “[t]he admissibility of postwarning statements should continue to be governed by the principles of [Oregon v. Elstad 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222(1985)].” Id. In Elstad, the Court concluded that “absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion,” and thus “[a] subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement.” Elstad, 470 U.S. at 314, 105 S.Ct. 1285. Accordingly, the Court held that statements made after a voluntary Miranda waiver could be admissible as long as the pre-Miranda statements were also uncoerced. Id. at 318, 105 S.Ct. 1285. “[A] suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite Miranda warnings.” Id.
In United States v. Carrizales-Toledo, we noted that determining the holding of Seibert is not easy in light of the fragmented nature of the opinion. 454 F.3d 1142, 1151 (10th Cir.2006). We declined to determine whether the four-justice plurality or Justice Kennedy’s concurrence reflects the holding of Seibert, and instead applied both tests to the facts of that case. Id. However, I would hold that Justice Kennedy’s concurrence, as the narrowest grounds for the Supreme Court’s decision to suppress, represents the holding of Seibert.[1]
Under the test advanced by Justice Kennedy, Mr. Sanchez-Gallegos’ post-Miranda statements are admissible. The record does not reflect that a “two-step interrogation technique was used in a calculated way to undermine the Miranda *73 warning.” 542 U.S. at 622, 124 S.Ct. 2601 (Kennedy, J., concurring in the judgment). Thus, we look to Elstad, which held that later statements could be admissible as long as the pre-Miranda statements were uncoerced. Elstad, 470 U.S. at 318, 105 S.Ct. 1285. As discussed above, while the agent’s pre-warning questioning was accusatory, it did not rise to the level of coercion such that Mr. Sanchez-Gallegos’ post-Miranda statements are inadmissible under Elstad. Accordingly, I find that Mr. Sanchez-Gallegos’ statements made after receiving the Miranda warning were properly admitted.[2]
III. The Admission of Mr. Sanchez-Gallegos’ Pre-Miranda Statement Was Harmless Error
Although the district court erred in admitting Mr. Sanchez-Gallegos’ pre-Mi-randa statement, this Court may nevertheless affirm his conviction if that error was harmless. “The Supreme Court has applied harmless error analysis to a wide range of constitutional errors, including the admission of unlawful confessions.” Perdue, 8 F.3d at 1469 (internal quotation marks omitted). “A constitutional error is harmless and may be disregarded if it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.” United States v. Holly, 488 F.3d 1298, 1307 (10th Cir.2007) (internal quotation marks omitted).
As a general rule, it is the government’s burden to prove that an error was harmless. See United States v. Lott, 310 F.3d 1231, 1251 (10th Cir.2002) (citing United States v. Miller, 111 F.3d 747, 751 (10th Cir.1997)). Here, the government failed to argue in its brief or at oral argument that the admission of Sanchez-Gallegos’ unwarned confession at trial was harmless. “Nevertheless, where the government has failed to assert harmless error, this court may in its discretion initiate harmless error review in an appropriate case.” Holly, 488 F.3d at 1307 (internal quotation marks and citation omitted). “In deciding whether to exercise its discretion to address harmlessness, this court considers ‘(1) the length and complexity of the record; (2) whether the harmlessness of the errors is *74 certain or debatable; and (3)- whether a reversal would result in protracted, costly, and futile proceedings in the district court.’ ” Id. at 1308 (quoting United States v. Samaniego, 187 F.3d 1222, 1225 (10th Cir.1999)).[3]
Considering harmless error sua sponte is appropriate in this case. As to the first factor, the record in this case comprises three volumes and more than 600 pages of material, but consists primarily of transcripts. Though a long and complex record normally weighs against sua sponte harmless-error review unguided by the arguments of the parties, Samaniego, 187 F.3d at 1225, in this case the record, while lengthy, is relatively straightforward, as is the case against Mr. Sanchez-Gallegos.
As to the second factor, even where a record is long and complex, sua sponte harmless-error review may be appropriate “where the certainty of the harmlessness is readily apparent.” Holly, 488 F.3d at 1308. Here, there can be little doubt that the error of admitting testimony of Sanchez-Gallegos’ one-sentence unwarned statement was harmless. Whereas this statement was short and vague, in his properly admitted post-Miranda statements, Mr. Sanchez-Gallegos explained the situation to the officers in detail and even assisted the officers in finding Victor and the children. The detail and extent of the post-Miranda statements so vastly outweigh the pre-Miranda statement that it is “beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.” Holly, 488 F.3d at 1307. Accordingly, a sua sponte harmless-error review is appropriate in this case, and inexorably leads to the conclusion that the admission of Mr. Sanchez-Gallegos’ pre-Miranda statement was harmless.
IV. Conclusion
While I believe that Mr. Sanchez-Gallegos was in custody at the time he made the unwarned admission, the subsequent Miranda warning sufficed to make the later statements admissible, and in light of the substance of those later statements, the admission at trial of the pre-warned statement was harmless error. I therefore concur with the judgment of the majority.

. The majority of our sister circuits have reached the same conclusion. See United States v. Capers, 627 F.3d 470, 476 (2d Cir.2010) (noting that the Second Circuit applies Justice Kennedy's approach); United States v. Torres-Lona, 491 F.3d 750, 758 (8th Cir.2007) (“We treat Justice Kennedy's concurrence as controlling since it provided the fifth vote necessary for a majority and since it was decided on narrower grounds than the plurality opinion.”); United States v. Street, 472 F.3d 1298, 1313 (11th Cir.2006) ("Because Seibert is a plurality decision and Justice Kennedy concurred in the result on the narrowest *73 grounds, it is his concurring opinion that provides the controlling law.”); United States v. Courtney, 463 F.3d 333, 338 (5th Cir.2006) ("[W]e find Seibert’s holding in Justice Kennedy’s opinion concurring in the judgment.”); United States v. Williams, 435 F.3d 1148, 1158 (9th Cir.2006) (finding that Justice Kennedy’s "narrower test ... represents Seibert’s holding”); United States v. Kiam, 432 F.3d 524, 532 (3d Cir.2006) ("This Court applies the Seibert plurality opinion as narrowed by Justice Kennedy.”); United States v. Mashburn, 406 F.3d 303, 309 (4th Cir.2005) ("Justice Kennedy's opinion therefore represents the holding of the Seibert Court: The admissibility of postwaming statements is governed by Elstad unless the deliberate ‘question-first’ strategy is employed.”). But see United States v. Heron, 564 F.3d 879, 884 (7th Cir.2009) ("Although Justice Kennedy provided the crucial fifth vote for the majority, we find it a strain at best to view his concurrence taken as a whole as the narrowest ground on which a majority of the Court could agree.... Justice Kennedy’s intent-based test was rejected by both the plurality opinion and the dissent in Seibert.”).

. I acknowledge that the conclusion might be different under the plurality’s test in Seibert. This test "concern[s] the relationship between the first and second interrogations.” Carrizales-Toledo, 454 F.3d at 1150. In this case, there was little distinction in the two phases of questioning. Although questions and answers became more specific during the second interrogation, the content clearly overlapped, as both interrogations concerned the transportation of children. Moreover, there was no break in the timing, setting, or personnel of the two interrogations. Finally, the questioning treated the second round as continuous with the first, as the second followed immediately upon the first and followed up on Mr. Sanchez-Gallegos' pre-Miranda statement.

. As noted by the Court in Holly, we have "quite reasonably” questioned the relevance of the third factor. Holly, 488 F.3d at 1308 n. 8; Samaniego, 187 F.3d at 1225 n. 2 ("Without eviscerating the doctrine, cost and potentially protracted proceedings cannot preclude reversal if an error was not harmless.”). Here, as in Holly, because the first two factors indicate that a sua sponte harmless-error review is appropriate in this case, we do not need to address the third factor. Holly, 488 F.3d at 1308 n. 8.