HOLMES, Circuit Judge,
dissenting.
I write separately because I dissent from the majority’s ultimate resolution of Mr. Little’s challenge to the constructive-possession jury instruction. Though I agree with the majority’s conclusion that this instruction is legally flawed because it omits the element of intent to exercise control, I respectfully object to the majority’s determination that the district court’s error in giving this instruction was harmless. Consequently, while the majority would affirm the district court’s judgment, I would reverse based on the constructive-possession instructional error and remand for further proceedings.
More specifically, I would decline to conduct a harmless-error analysis because the government has not made a specific harmless-error argument regarding the constructive-possession instructional error, and the conditions that would ordinarily support sua sponte harmless-error review are not satisfied here. Consequently, I would hold that the district court’s error stemming from its allowance of the constructive-possession instruction is reversible error and that the court’s judgment therefore cannot stand. I would not definitively opine on the other issues in this case.
Stated with greater particularity, I agree with the majority’s conclusion that Henderson v. United States, — U.S. -, 135 S.Ct. 1780, 191 L.Ed.2d 874 (2015), constitutes intervening Supreme Court precedent that alters the elements of constructive possession under 18 U.S.C. § 922(g) found in our circuit’s precedent: that is, contrary to the Tenth Circuit decisions that preceded it, Henderson makes clear that the government must establish that the defendant had an intent to exercise control over the firearm (or other statutorily proscribed items), not just the power to do so. See Henderson, 135 S.Ct. at 1784 (“Constructive possession is established when a person, though lacking ... physical custody, still has the power and intent to exercise control over the object.” (emphasis added)). Because the constructive-possession instruction in this case did not include an intent-to-exercise-control component, as Henderson requires, I agree with the majority’s conclusion that the district court erred in submitting this instruction to the jury and this error was of constitutional magnitude. See, e.g., Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (noting that a district court errs when it gives “a jury instruction that omits an element of the offense”); id. at 12, 119 S.Ct. 1827 (“The Government argues, correctly we think, that the absence of a ‘complete verdict’ on every element of the offense ... violates the Sixth Amendment’s jury trial guarantee.”).
Having concluded that the constructive-possession instruction was fatally defective, our court would customarily turn — as the majority does — to the question of whether the error was harmless. See Fed. R. Crim. P. 52(a) (providing that an error “that does not affect substantial rights must be disregarded”); United States v. Wittgenstein, 163 F.3d 1164, 1169 (10th Cir. 1998) (“Having found that the district *1188 court misstated the arrest element of an 8 U.S.C. § 1326 offense, we must assess whether the instruction nevertheless constitutes harmless error.”); see also United States v. Blechman, 657 F.3d 1052, 1067 (10th Cir. 2011) (“We will not reverse a defendant’s conviction on the basis of the district court’s erroneous admission of hearsay evidence if the error was harmless to the defendant.”). However, ordinarily, “[t]he burden of proving the error was harmless is on the Government.” United States v. Serawop, 410 F.3d 656, 669 (10th Cir. 2005); see, e.g., United States v. Lott, 433 F.3d 718, 723 (10th Cir. 2006) (“Under harmless error review, the government has the burden of proving beyond a reasonable doubt that’the constitutional violation did not contribute to the judgment.”); United States v. Summers, 414 F.3d 1287, 1303 (10th Cir. 2005) (“Under a harmless error analysis, the government bears the burden of demonstrating that the error was harmless beyond a reasonable doubt.”). But the government has failed to carry its harmless-error burden here.
The government makes no specific harmless-error argument with respect to the constructive-possession instructional error. I recognize that the government offers some general and cursory assertions that appear to advance the contention that our court should deem errors in any of the •challenged instructions to be harmless. See, e.g., Aplee.’s Br. at 15 (noting in its “Summary of the Argument” section that, “read together, each of these [challenged] instructions, in the context of the record as a whole, was not misleading, and even if unsupported resulted in only harmless error”). However, these assertions are con-clusory and skeletal when applied to the specific circumstances of the jury’s consideration of the constructive-possession instruction; in my view, they do not constitute a cognizable harmless-error argument regarding that instruction. See, e.g., United States v. Faust, 795 F.3d 1243, 1248 n. 4 (10th Cir. 2015) (“Mr. Faust, however, does not elaborate on this bare assertion; thus, we may rightly deem any argument that could be based on it to be waived.”); United States v. Pursley, 577 F.3d 1204, 1231 n. 17, 1232 (10th Cir. 2009) (“Under our precedent, this skeletal reference is insufficient to raise the ex parte/disclosure concern as a discrete appellate issue.”); see also Bronson v. Swensen, 500 F.3d 1099, 1105 (10th Cir. 2007) (“[T]hese cursory statements, without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to avoid application of the forfeiture doctrine.”). Indeed, one could reasonably assert that the government had no intention of presenting a harmless-error argument concerning the constructive-possession instructional error because the government demonstrated at other points in its brief that it knew how to articulate a harmless-error argument when it wanted to do so, see, e.g., Aplee.’s Br. at 32 (devoting a section of its brief to the harmlessness of any error associated with the willful-blindness instruction), but it did not do so regarding the constructive-possession error.
Thus, absent a harmless-error argument from the government regarding the erroneous constructive-possession instruction, the question becomes whether it is appropriate for our court to conduct a harmless-error analysis sua sponte. I answer that question in the negative — viz., it is not appropriate. “[T]his court may in its discretion ‘initiate harmless error review in an appropriate case.’ ” United States v. Samaniego, 187 F.3d 1222, 1224 (10th Cir. 1999) (emphasis added) (quoting United States v. Torrez-Ortega, 184 F.3d 1128, 1136 (10th Cir. 1999)); see also United States v. Vanderwerff, 788 F.3d 1266, 1279 (10th Cir. 2015) (noting that “we have on occasion engaged in harmless-error analysis — either at the request of a party or, ‘in an appropriate case,’ sua sponte” (quoting *1189 Samaniego, 187 F.3d at 1224)). However, we “should ... be hesitant to engage in an ‘unsolicited, unassisted, and undirected harmless error review.’ ” United States v. Holly, 488 F.3d 1298, 1308 (10th Cir. 2007) (quoting Samaniego, 187 F.3d at 1225); cf. United States v. Doe, 572 F.3d 1162, 1184 (10th Cir. 2009) (Holmes, J., dissenting) (“The government has failed to argue that the inadequacy of the information [i.e., the charging document] was harmless error. While we may, in certain limited circumstances, conduct a sua sponte harmless error analysis, it would not be appropriate to do so here.”); United States v. Pryce, 938 F.2d 1343, 1347 (D.C. Cir. 1991) (Williams, J., announcing judgment of the panel) (“Where a court analyzes the harmless error issue wholly on its own initiative, it assumes burdens normally shouldered by government and defense counsel. This drain on judicial resources inevitably causes delay for parties in other cases.”).
“In considering whether to do so, we have ‘cited with approval three factors suggested by the Seventh Circuit in determining whether an appellate court should address harmlessness when the government has failed to do so.... ’ ” Mollett v. Mullin, 348 F.3d 902, 920 (10th Cir. 2003) (quoting Samaniego, 187 F.3d at 1225); see United States v. Giovannetti, 928 F.2d 225, 227 (7th Cir. 1991). That is, we look to “(1) the length and complexity of the record; (2) whether the harmlessness of the errors is certain or debatable; and (3) whether a reversal would result in protracted, costly, and futile proceedings.” Mollett, 348 F.3d at 920 (quoting Samaniego, 187 F.3d at 1225). “However, ‘confusion about what the third factor contributes to the analysis has caused this and other courts to merely reference [the third factor] but not apply it.’ ” Id. (alteration in original) (quoting Samaniego, 187 F.3d at 1225 n. 2).
The most important of these factors is the second one — i.e., the certainty of harmlessness. See Holly, 488 F.3d at 1308 (noting that “it may be appropriate to [apply harmless-error review] where the certainty of the harmlessness is readily apparent”). This factor can be dispositive under certain circumstances. See United States v. Gonzalez-Flores, 418 F.3d 1093, 1101 (9th Cir. 2005) (“[T]he second factor — the court’s certainty as to the harmlessness of the error — is of particular importance.”); Doe, 572 F.3d at 1188 (Holmes, J. dissenting) (analyzing only the second factor, i.e., the certainty of harmlessness, because “[t]he most important of the[] factors is the certainty of the result”); see also United States v. Rodriguez-Preciado, 399 F.3d 1118, 1143 (9th Cir. 2005) (Berzon, J., dissenting in part) (“[T]he touchstone of whether courts should reach harmless error sua sponte is the extent to which the harmlessness of the error is open to question.”); cf. Gover v. Perry, 698 F.3d 295, 301 (6th Cir. 2012) (noting that “the adoption of [the Seventh Circuit’s test] does not mandate that a circuit court review the record before it for harmlessness in every instance, only that it has discretion to do so when the error is harmless upon review of a clear record” (emphasis added)). “Evaluation of the certainty of the harmlessness necessarily requires this court to review the record to some extent, though not to the same degree as would be required pursuant to a full harmless error review.” Holly, 488 F.3d at 1308.
Having reviewed the record, I do not believe that the conditions for conducting a harmless-error review sua sponte are satisfied here. In particular, the harmlessness of the error stemming from the constructive-possession instruction is far from certain or readily apparent; at a minimum, harmlessness could be vigorously debated here. See Holly, 488 F.3d at 1308; Mollett, 348 F.3d at 920. In other words, the most *1190 important condition — the second one — is not satisfied. And, at least under the circumstances here — where I discern no other variables that could materially alter the discretionary calculus, cf. United States v. Rose, 104 F.3d 1408, 1415 (1st Cir. 1997) (“While we find helpful the reasoning of the Seventh Circuit, we do not restrict ourselves to [its] test. The exercise of discretion involves the balancing of many elements.” (citation omitted)) — that conclusion dooms the argument for sua sponte harmless-error review.
More specifically, there is little evidence in the record that addresses Mr. Little’s intent to exercise control over the firearms and ammunition at issue. As I see it, the only evidence that meaningfully suggests Mr. Little’s intent to exercise control was Ms. Blythe’s testimony that Mr. Little put a lock on the door to the well house about a week before the police arrived to conduct the search — that is, shortly after the firearms were taken from Southwest Arms— and that he did not give her a key to the lock. See R., Vol. VII, at 189 (Test, of Ms. Blythe) (answering “Cody” Little to the question “Who put the lock on that [well house] door?,” and stating that he did so “[a]bout a week before the cops showed up”); id. at 190 (responding “No” when asked “Did you have a key?”); cf. United States v. Piwowar, 492 F.3d 953, 955 (8th Cir. 2007) (discerning an intent to exercise control when there was “evidence [defendant] owned the building where the refrigerator [containing firearms] was located and possessed the sole key to the refrigerator”).
However, the testimony of two law-enforcement officers .failed to solidly confirm that the lock was on the door at the time of the search. See R., Vol. VII, at 62 (Test, of Agent Budrow) (averring “I don’t totally recall” a lock on the well house at the time of the search, but “I believe there was”); id. at 178 (Test. of Lt. Brackeen) (“I don’t recall if that lock was there at that time [of the search] or not.”). More importantly, even if there was a lock on the door at the time of the search, the jury heard testimony indicating that Mr. Little did not use it at all times. Specifically, law-enforcement testimony indicated that the well house door was unlocked when the officers executed the search. See id. at 90 (Test. of Agent Budrow) (averring that the door to the well house “was not locked” at the time of the search); id. at 150 (Test, of Sgt. Clark) (testifying that the door to the well house “was unlocked” when the firearms were found). Such testimony could have diluted in the eyes of a reasonable jury the probative force of the evidence regarding Mr. Little putting a lock on the door because it could have suggested to the jury that Mr. Little was not especially concerned about others — instead of himself— exercising control over the firearms and ammunition.
At bottom, what is clear is that there was scant evidence before the jury that addressed Mr. Little’s alleged intent to exercise control over the firearms and ammunition at issue. Of course, that is not really surprising since the government had no reason to believe that Mr. Little’s intent to exercise control would be relevant to this case. And, the relevant evidence that was presented (e.g., the lock evidence), hardly put the question of Mr. Little’s intent to exercise control beyond debate. Consequently, I cannot conclude that the harmlessness of the constructive-possession instructional error here was certain or readily apparent; therefore, the important second factor does not support sua sponte harmless-error review. And, at least under the circumstances here, this conclusion is dispositive. That is, I need not go beyond this second factor. I conclude that it is inappropriate to conduct harmless-error review sua sponte of the constructive-possession instructional error.
*1191 To be sure, after seemingly overlooking the government’s failure to argue harmless error, the majority concludes that the constructive-possession instructional error was harmless, primarily by relying on Mr. Little’s supposed exclusive control of the well house. However, the majority’s harmless-error analysis does not alter my view that the resolution of the harmlessness question is at least debatable and far from certain or readily apparent.
As the majority candidly acknowledges, the cases on which it relies only hold that constructive possession may be inferred from a defendant’s exclusive control of the premises in which the firearms are found; the cases do not indicate that a defendant’s exclusive control of the premises necessitates an inference of constructive possession. See United States v. Hishaw, 235 F.3d 565, 571 (10th Cir. 2000) (holding that “the defendant’s dominion, control, and knowledge may be inferred if he had exclusive possession of the premises on which the object was found” (emphasis added)); see also United States v. Griffin, 684 F.3d 691, 695 (7th Cir. 2012) (noting that “if the government demonstrates that the defendant had ‘exclusive control’ over the property where the contraband was discovered, a jury may reasonably infer that he constructively possessed the items, including the contraband, found on that property” (emphasis added)); United States v. Alanis, 265 F.3d 576, 592 (7th Cir. 2001) (holding that “constructive possession may be established by a showing that the firearm was seized at the defendant’s residence” (emphasis added) (quoting United States v. Walls, 225 F.3d 858, 867 (7th Cir. 2000))). Moreover, though the majority relies on the “particular facts of this case” to support its conclusion that “there is no reasonable possibility that the jury would have found that Little had knowledge of the weapons at issue but lacked intent to exercise control over them,” Maj. Op. at 1183, the majority does not identify those particular facts. And such facts are not readily apparent to me.
Indeed, the principal pillar of the majority’s harmlessness conclusion — Mr. Little’s purported exclusive control of the well house — is far from rock solid. Though Ms. Blythe indicated that she had not been in the well house since “about a week” after Mr. Little’s mid-September move-in date, R., Vol. VII, at 184, 190, she acknowledged that she still stored an “ice chest and buckets” there, id. at 185. Moreover, though Ms. Blythe testified that Mr. Little put a lock on the door about a week before the search (that is, after the robbery), and did not give her a key, as noted above, there are two weaknesses associated with this testimony: first, there was no evidence to solidly confirm it; and, second, even if her testimony was true, there was evidence indicating that Mr. Little did not use that lock at all times. Furthermore, Ms. Blythe could not rule out the possibility that “people came over to [her] home” when she was away. Id. at 208. Accordingly, the evidence of Mr. Little’s alleged exclusive control over the well house is not sufficiently firm for me to conclude that it is certain or readily apparent that a reasonable jury would have inferred from it that Mr. Little possessed an intent to exercise control over the firearms and ammunition in the well house.
I need not (and thus do not) definitively opine on whether the government could have carried its burden of proving that the district court’s constructive-possession instructional error was harmless. The government did not even get out of the starting blocks on the issue; in other words, it did not even attempt to carry its harmless-error burden. Guided by our precedent— including Samaniego, Holly, and Mollett— I have inquired whether it is appropriate for our court to conduct harmless-error review sua sponte. It is not. That is be *1192 cause the harmlessness of the constructive-possession instructional error is at least debatable, and far from certain or readily apparent. Therefore, I would conclude that the district court’s omission from its constructive-possession instruction of the element of intent to exercise control is reversible error. Accordingly, I would reverse and remand the case for further proceedings.[1]

. As noted, because I would reverse based on the constructive-possession instructional error, I have no need to definitively opine on Mr. Little’s other appellate challenges. However, I pause to observe that, as I read its opinion, the majority is remanding based on Johnson v. United States, —U.S. -, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), because — like the government — the majority cannot "uncouple the ruling,” Aplee.’s Br. at 38, of the district court and determine whether the district court relied on the residual clause because it "did not specify whether [Mr. Little's convictions] were [crimes of violence] because of the elements of the crime, or because of the residual clause,” id.