**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 19, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
————————————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CODY LITTLE,

    Defendant - Appellant.

No. 15-2019

————————————————————

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 5:12-CR-02654-RB-1)**
————————————————————

Andre Poissant, Assistant Federal Public Defender, Office of the Federal Public Defender, Las Cruces, New Mexico, for Defendant-Appellant.

Shaheen P. Torgoley, Assistant United States Attorney (Damon P. Martinez, United States Attorney, Office of the United States Attorney, Albuquerque, New Mexico with her on the brief), for Plaintiff-Appellee.

————————————————————

Before **TYMKOVICH**, Chief Judge, **LUCERO** and **HOLMES**, Circuit Judges.

————————————————————

**LUCERO**, Circuit Judge.

————————————————————

    After police discovered stolen weapons in Cody Little's residence, a jury

convicted him of being a felon in possession of a firearm and of possessing a stolen

firearm.  Little appeals, challenging several jury instructions.  We agree with Little that

constructive possession requires proof of intent to exercise dominion and control over an object following the Supreme Court's opinion in Henderson v. United States, 135 S. Ct. 1780 (2015). However, because the evidence presented at trial compels the conclusion that Little intended to exercise control over the weapons, we hold the district court's error in omitting the intent element from its jury instruction was harmless. We further conclude that the district court permissibly issued instructions regarding aiding and abetting and possible guilt of others, and that a deliberate indifference instruction was harmless. Finally, we hold that the district court erroneously relied on the Sentencing Guidelines' residual clause in calculating Little's offense level. Thus, exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2), we affirm Little's convictions but vacate his sentence and remand for resentencing.

## I

On the night of October 24, 2011, seven firearms were stolen from Southwest Arms in Lovington, New Mexico. The store owner received an anonymous tip that Little was the burglar. She passed the tip on to investigating authorities. Law enforcement learned that Little was residing on the property of Lacosta Blythe, not far from Southwest Arms.

On November 1, 2011, several law enforcement officials, including Agent Anthony Budrow, visited Blythe's property. Blythe, her boyfriend, and two minor children lived in a residential trailer on her lot. Little resided nearby in a six-by-eight foot "well house" he rented from Blythe. Several storage sheds were also located on the property.

2

Upon arriving at the scene, Budrow activated a recording device. The officers spent several minutes speaking to two or three individuals on the porch of Blythe's trailer. Seven and a half minutes after arriving, Budrow made eye contact with Little as Little was exiting the well house. Two officers pursued Little down a walkway and behind the trailer. Budrow remained at the front of the property and observed that no one else entered or exited the well house. One of the officers who pursued Little escorted him back to the front of the trailer. The other officer stayed behind, where he observed assault rifle hand guards inside of an open shed. Upon seeing the guards, the officers sought a search warrant. They cleared the premises and ensured no one entered any building on the property while they waited for the warrant to issue, although Little indicated he wanted to go back into the well house.

The officers received and executed a warrant later that day. Upon entering the well house, they saw two plainly visible shotgun shells on a shelf below eye level. They also recovered two firearms matching guns stolen in the burglary. One of the weapons—a loaded assault rifle—was found inside a duffel bag under or inside a sleeping bag on a bed. The other weapon—a shotgun—was found under the bed. Officers described the well house as cramped. The bed, which ran almost the entire length of the well house, was the only place to sit.

No other firearms were discovered on the premises. However, officers found a small bag of methamphetamine in the trailer. They agreed that the trailer's residents would not be charged for possession of the drugs if they cooperated with the officers—particularly by recovering any other stolen firearms. One day after the

3

search, Blythe turned over a third gun found between two sheds on the property. The gun was missing its hand guard, and matched the guard found inside the shed.

Little was indicted for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Following his first trial, the jury deadlocked and a mistrial was declared. The government then filed a superseding indictment adding a count for possession of stolen firearms, §§ 922(j) and 924(a)(2). The superseding indictment also charged aiding and abetting as to both counts. Little again proceeded to trial.

At the second trial, the government presented testimony from several law enforcement officers describing the foregoing search and seizure. Blythe testified that the last time she had entered the well house was in mid-September 2011, a week after Little moved in. She saw Little access the well house on a daily basis, but never saw anyone else enter. Blythe further testified that Little installed a lock on the well house door about a week before the search—around the time Southwest Arms was burgled—but did not give her a key. However, officers did not recall seeing the lock, and testified that the well house was not locked when they performed their search. Blythe also averred that when she showed Little the police inventory report after the search, he responded, "[t]hey only found two?" The jury also heard a recorded phone call Little placed from jail during which he described another burglary suspect as a "snitch," and angrily accused him of "snitch[ing] me out."

4

The jury convicted Little on both counts.[1]  The district court calculated a total offense level of 28, based in part on Little's prior convictions for crimes of violence. It imposed a within-Guidelines sentence of 150 months' imprisonment.  Little timely appealed.

## II

We review de novo whether jury instructions, as a whole, correctly state the law and provide the jury with an understanding of the issues.  United States v. Wittgenstein, 163 F.3d 1164, 1168 (1998).  We will disturb a judgment only if we have "substantial doubt that the jury was fairly guided."  United States v. Smith, 13 F.3d 1421, 1424 (10th Cir. 1994).

### A

Little challenges the instruction on constructive possession.  Conviction for possession of a firearm pursuant to § 922 requires proof of "knowing possession." See United States v. Heckard, 238 F.3d 1222, 1228 (10th Cir. 2001).  Such possession may be either actual or constructive.  See United States v. Mills, 29 F.3d 545, 549 (10th Cir. 1994).  The district court used the unmodified Tenth Circuit Criminal Pattern Jury Instruction § 1.31 (2011), which provides that constructive possession exists when a person not in actual possession "knowingly has the power at a given time to exercise dominion or control over an object."  Little argues that the

---

[1] Little was convicted for possession of the items recovered from the well house, not the firearm recovered by Blythe after the initial search.

court should have instead instructed that constructive possession exists when a person knowingly has the power and the intention to exercise dominion or control.

In United States v. Colonna, 360 F.3d 1169 (10th Cir. 2004), we held that for purposes of constructive possession "[i]t is not necessary to show that the defendant intended to exercise . . . dominion or control." Id. at 1179. We have subsequently reaffirmed that holding. See, e.g., United States v. Jameson, 478 F.3d 1204, 1211 n.2 (10th Cir. 2007). As we explained in United States v. Ledford, 443 F.3d 702 (10th Cir. 2005), a panel may not overrule Colonna "[a]bsent intervening Supreme Court or en banc authority to the contrary." Id. at 716.

Little argues that Henderson v. United States, 135 S. Ct. 1780 (2015), provides the intervening Supreme Court authority lacking in Ledford.[2] In Henderson, the Court held that an individual convicted of being a felon in possession of a firearm may direct the transfer of a seized firearm to a third party, provided that the third party would not grant the individual access to the weapon. 135 S. Ct at 1784-85. It rejected the government's argument that allowing such a transfer would place the felon in constructive possession of the weapon. Id. at 1785. Crucially, for our purposes, the Court observed that "[c]onstructive possession is established when a person, though lacking physical custody, still has the power and intent to exercise control over the object." Id. at 1784 (emphasis added) (citing Black's Law

---

[2] Although Henderson was decided after Little's sentencing, when the Supreme Court decides a new rule, "the integrity of judicial review requires that we apply that rule to all similar cases pending on direct review." Griffith v. Kentucky, 479 U.S. 314, 323 (1987).

6

Dictionary 1047 (5th ed. 1979) and 2A K. O'Malley, J. Grenig, & W. Lee, Federal

Jury Practice and Instructions, Criminal § 39.12, p. 55 (6th ed. 2009)). The Court

further observed that "the very hallmark of possession" is that a defendant have

"broad[] command over the gun's location and use." Id. at 1785 n.3.

We agree that Henderson changes the law of constructive possession in our

circuit. In Henderson, the Court squarely held that constructive possession requires

both power to control an object and intent to exercise that control. Id. at 1784.

Because Colonna's disavowal of an intent requirement is incompatible with the

Supreme Court's decision in Henderson, we overrule that point of law. See United

States v. White, 782 F.3d 1118, 1123 n.2 (10th Cir. 2015) ("Although typically, one

panel of this court cannot overrule the judgment of another panel, we may do so if an

intervening decision from the Supreme Court invalidates our previous analysis.").

We thus hold that constructive possession exists when a person not in actual

possession knowingly has the power and intent at a given time to exercise dominion

or control over an object. Accord Henderson, 135 S. Ct. at 1784.[3]

This holding aligns our circuit not only with Supreme Court precedent but with

every other circuit but one that has considered the issue. See United States v.

Introcaso, 506 F.3d 260, 270 (3d Cir. 2007); United States v. Bustamante, 493 F.3d

879, 889 (7th Cir. 2007); United States v. Piwowar, 492 F.3d 953, 955 (8th Cir.

---

[3] In United States v. Ibarra-Diaz, 805 F.3d 908 (10th Cir. 2015), an opinion issued after Henderson was decided, we stated in dicta that constructive possession requires that a "defendant knowingly has the power to exercise control or dominion over the item." Ibarra-Diaz, 805 F.3d at 932 (quotation omitted). We did not consider Henderson's impact on our circuit precedent in Ibarra-Diaz.

7

2007); United States v. McFarlane, 491 F.3d 53, 59 (1st Cir. 2007); United States v. Gardner, 488 F.3d 700, 713 (6th Cir. 2007); United States v. Jones, 484 F.3d 783, 788 (5th Cir. 2007); United States v. Ruiz, 462 F.3d 1082, 1089-90 (9th Cir. 2006); United States v. Paulino, 445 F.3d 211, 222 (2d Cir. 2006); United States v. Greer, 440 F.3d 1267, 1271 (11th Cir. 2006); United States v. Scott, 424 F.3d 431, 435-36 (4th Cir. 2005); see also United States v. Johnson, 6 F.3d 829, 1993 U.S. App. LEXIS 26474, at *5 (D.C. Cir. 1993) (unpublished). But see United States v. Littlejohn, 489 F.3d 1335, 1338 (D.C. Cir. 2007) ("To establish constructive possession, the government must show that the defendant knew of, and was in a position to exercise dominion and control over, the contraband." (quotation omitted)).

Having decided that constructive possession requires intent to exercise control, we must consider whether the district court's jury instruction constitutes reversible error. The government contends that there was no error because a different instruction defined the word "knowingly" as "voluntarily and intentionally." Thus, the government suggests, the district court instruction that constructive possession required knowledge and control effectively required intent. But reading these instructions together, the jury was informed that constructive possession requires that a defendant voluntarily and intentionally have the power to exercise dominion or control over an object. Intentionally having the power to exercise dominion is not the same as intending to exercise dominion. For example, a felon who knows his neighbor keeps a gun in his bedroom and who is given a key to watch his neighbor's

8

house would intentionally have the power to exercise control over the weapon, but would not be guilty of constructive possession without the intent to actually exercise control. See Benjamin C. McMurray, Hands Off the Gun! A Critique of United States v. Jameson and Constructive Possession Law in the Tenth Circuit, 85 Denv. U. L. Rev. 531, 561 (2008) (listing hypotheticals). We thus conclude that the "voluntarily and intentionally" instruction does not remedy the deficiency.

However, "[e]ven when the district court fails to include an element of the crime in the instruction (including a mens rea element), we still apply the harmless error rule, asking whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." United States v. Sorensen, 801 F.3d 1217, 1229 (10th Cir. 2015). We hold that the district court's error was harmless because a reasonable jury would be compelled to conclude that Little intended to exercise control over the weapons. The government submitted substantial evidence demonstrating that Little had exclusive control over the well house, including his placement of a lock on the door around the time the firearms were stolen. And when Blythe reported to Little that police seized two guns, he responded "[t]hey only found two?" Little argues that Blythe was an unreliable witness, but even setting her testimony aside, there is no dispute that Little spent at least seven and a half minutes in the six-by-eight foot well house when officers arrived on the day of the search. Law enforcement found plainly visible ammunition in the well house and weapons on and under Little's bed, which spanned nearly the entire length of the house and was the only place to sit. Given his exclusive control of the tiny

9

well house, and the seven and a half minutes he indisputably spent in it, it would be unreasonable to conclude that Little did not know about the presence of the weapons. See United States v. Hishaw, 235 F.3d 565, 571 (10th Cir. 2000) ("In most cases, the defendant's dominion, control, and knowledge may be inferred if he has exclusive possession of the premises on which the object was found."). The same is true as to Little's intent to exercise command over their location. See United States v. Griffin, 684 F.3d 691, 695 (3d Cir. 2012) ("Exclusive control over the premises allows the jury to infer the knowledge and intent to control objects within those premises . . . ."); United States v. Alanis, 265 F.3d 576, 592 (7th Cir. 2001) ("When a gun is found in a defendant's bedroom . . . it would not be improper for the jury to infer that the defendant had both knowledge of the firearm and an intent to exercise dominion and control over it merely from its presence in the bedroom . . . ." (quotation and alteration omitted)).

We acknowledge that the foregoing cases stand for the proposition that a jury may infer constructive possession under such circumstances, not that a jury must make that inference. But given the particular facts of this case, we conclude there is no reasonable possibility that the jury would have found that Little had knowledge of the weapons at issue but lacked intent to exercise control over them.[4] We thus hold that the constructive possession instruction constituted harmless error.

---

[4] The dissent correctly observes that we generally undertake harmless error analysis sua sponte only if the harmlessness of the error is certain. See Mollett v. Mullin, 348 F.3d 902, 920 (10th Cir. 2003) (quotation omitted). The "certainty" burden is necessarily more stringent than the "reasonable doubt" test we would apply

## B

Little challenges the district court's instruction on aiding and abetting. He argues that inclusion of the instruction was inconsistent with the government's theory that Little was the principal. He further argues that there was insufficient evidence to support the instruction.

We have repeatedly held that a district court may provide an aiding and abetting instruction even if the government argues a defendant is guilty as a principal. See United States v. Cooper, 375 F.3d 1041, 1050-51 (10th Cir. 2004); United States v. Cueto, 628 F.2d 1273, 1275-76 (10th Cir. 1980). So long as there is record evidence from which the jury could find that the defendant "was either a principal, or an aider and abettor," the government may submit both theories to the jury. Cooper, 375 F.3d at 1049 (quotation omitted).

We thus turn to Little's sufficiency argument. Generally, a conviction for aiding and abetting requires that the defendant: "(1) willfully associate[s] himself with the criminal venture, and (2) seek[s] to make the venture succeed through some action of his own." United States v. Bowen, 527 F.3d 1065, 1078 (10th Cir. 2008). Little suggests that a conviction for aiding and abetting a § 922(g) offense requires

---

had the government thoroughly developed its harmlessness argument. See United States v. Serawop, 410 F.3d 656, 669 (10th Cir. 2005). But Little indisputably spent seven and a half minutes in the six-by-eight foot well house with plainly visible ammunition and two stolen firearms while police questioned his landlord and acquaintances outside his door. Contrary to the dissent, we are left with no doubt that Little intended to exercise control over the weapons.

11

evidence that another specific felon possessed the weapons and that the aider and abettor knew or had cause to know of this other person's status as a felon.[5]

Even assuming Little is correct regarding the evidence necessary to support an aiding and abetting instruction,[6] we conclude the government met its burden. Little argued that other individuals may have possessed the stolen firearms and ammunition—in particular, Blythe. During cross-examination, Blythe admitted she was a felon. She also testified that she and Little had known each other since they were children. The jury could infer that if Blythe possessed the weapons, Little intentionally sought to make that possession succeed by allowing her to keep the weapons in the well house over which he had exclusive control, and that Little knew

---

[5] Little does not challenge the language of the instruction on appeal, and any such challenge is therefore waived. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived."). Similarly, Little argued to the district court that an aiding and abetting instruction should not be given because the evidence did not support such an instruction, but he did not object to the particular language of the instruction or proffer alternative language. See United States v. Zapata, 546 F.3d 1179, 1190 (10th Cir. 2008) ("[A] generalized objection to an instruction is insufficient to preserve a specific objection on appeal.").

[6] The circuits are split as to whether a defendant charged with aiding and abetting a felon in possession must know the principal was a felon. Compare United States v. Xavier, 2 F.3d 1281, 1286 (3d Cir. 1993) ("[T]here can be no criminal liability for aiding and abetting a violation of § 922(g)(1) without knowledge or having cause to believe the possessor's status as a felon."), and United States v. Gardner, 488 F.3d 700, 715 (6th Cir. 2007) ("[I]n order for aiding-and-abetting liability to attach under § 922(g), the government must show that the defendant knew or had cause to know that the principal was a convicted felon."), with United States v. Canon, 993 F.2d 1439, 1442 (9th Cir. 1993) (government is not required to show defendant knew of principal's status as a felon). But see United States v. Graves, 143 F.3d 1185, 1188 (9th Cir. 1998) (questioning the Ninth Circuit's position, and suggesting that it would be "logical" to require that an aider abettor under § 922(g) have knowledge of the principal's status).

12

of Blythe's status as a felon. We accordingly conclude that there existed sufficient evidence to support the aiding and abetting instruction.

## C

Little challenges the "deliberate ignorance" instruction for insufficient evidence. The jury was informed it could infer knowledge if Little "was aware of a high probability of the existence of the charged firearms or ammunition where he was living, unless the defendant did not actually believe the charged firearms or ammunition were present where he was living."

"[A] deliberate ignorance instruction is proper only when evidence has been presented showing the defendant purposely contrived to avoid learning the truth." United States v. Bornfield, 145 F.3d 1123, 1129 (10th Cir. 1998) (quotation omitted). In making this determination, we view the evidence in the light most favorable to the government. Id. The instruction "alerts the jury that [an] act of avoidance . . . motivated by sufficient guilty knowledge [may] satisfy the knowing element of the crime." Id. (quotation and alteration omitted). However, the risk of providing this instruction when there is "evidence of direct knowledge but no evidence of avoidance of knowledge is that the jury could still convict a defendant who merely should have known about the criminal venture." United States v. Manriquez Arbizo, 833 F.2d 244, 249 (10th Cir. 1987).

The government argues evidence that Little should have known about the firearms is sufficient to show that he deliberately avoided knowledge. And the district court overruled Little's objection to this instruction based on the substantial

13

evidence suggesting he knew or should have known that the firearms were in the well house.  But Manriquez Arbizo rejected this rationale.  Id. at 248-49 ("[I]f the evidence against the defendant points solely to direct knowledge of the criminal venture, it would be error to give the instruction.").  Allowing a deliberate ignorance instruction premised on evidence of constructive knowledge reduces the standard for conviction from knowledge to recklessness or negligence.  See United States v. Hilliard, 31 F.3d 1509, 1516 (10th Cir. 1994) (deliberate ignorance instruction is improper when rationale for instruction is "too close to premising criminal liability upon a reckless disregard for the truth or a negligent failure to inquire").  We are not directed to any evidence in the record suggesting that Little deliberately avoided knowledge of the firearms, and thus agree that the instruction was improper.

Nevertheless, we conclude that the instruction was harmless.  When overwhelming evidence supports a finding of actual knowledge, "the tendering of a 'willful blindness' instruction is harmless beyond a reasonable doubt even when the government does not introduce evidence to support such a theory."  United States v. Sasser, 974 F.2d 1544, 1553 (10th Cir. 1992).  As discussed in Section II.A, supra, the evidence showing Little had actual knowledge of the weapons was substantial.  Because we are convinced beyond a reasonable doubt that the deliberate ignorance instruction played no part in the jury's verdict, we hold that the instruction was harmless.

14

## D

Little argues that the district court erred in giving a "possible guilt of others" instruction. The court provided the Tenth Circuit Criminal Pattern Jury Instruction § 1.19 (2011), explaining that "[t]he fact that another person also may be guilty is no defense to a criminal charge" and that "[t]he question of the possible guilt of others should not enter your thinking as you decide whether this defendant has been proved guilty of the crime charged."

Little argues that the use notes to the pattern instruction suggest it should be used only if a defendant requests an instruction that a person other than the defendant could be guilty of the offense. Little did not request such an instruction. But the use notes do not state that a guilt of others instruction is appropriate only in response to a defendant's request. See Tenth Circuit Criminal Pattern Jury Instruction § 1.19, use note (2011). At trial, Little argued that someone else was involved in storing the firearms on Blythe's property. The district court properly instructed the jury that involvement by third parties would not constitute an absolute defense. Moreover, Little's suggestion that this instruction amounted to directing the jury to ignore the defense's argument that someone else committed the crime is foreclosed by precedent. See United States v. Oberle, 136 F.3d 1414, 1423 (10th Cir. 1998).[7]

---

[7] Little also contends that even if the four instructions discussed supra were not individually misleading, they were misleading as a whole because they would allow a guilty verdict even if someone else placed the firearms in Little's home and Little had only constructive knowledge of the weapons or ammunition. We agree that the instructions erroneously failed to require intent to exercise control and that the deliberate ignorance instruction was not warranted. However, as noted supra, these errors were

15

## III

The district court determined that Little's total offense level was 28, due in part to two prior convictions for crimes of violence. See U.S.S.G. § 4B1.2(a) (defining "crime of violence"). Little had multiple prior convictions for "battery upon a peace officer" in New Mexico. For a conviction under this charge, battery must result in actual injury to the officer, represent a threat to the officer's safety, or present a meaningful challenge to the officer's authority. State v. Padilla, 937 P.2d 492, 493 (N.M. 1997).

The district court stated that a New Mexico conviction for battery upon a police officer meets the requirement for a crime of violence "in one of two ways." First, the court suggested that such convictions qualify under U.S.S.G. § 4B1.2(a)(1) because the "actual injury" requirement means that the crime has as an element the use of force. "In parallel," the court observed that the "'actual threat to safety, or meaningful challenge to authority' aligns with the Sentencing Guideline's residual clause." See U.S.S.G. § 4B1.2(a)(2) (defining "crime of violence" as including offenses that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another"). Thus, the district court concluded, any conviction for the New Mexico offense would qualify as a crime of violence.

Following Little's sentencing, we held that under Johnson v. United States, 135 S. Ct. 2551 (2015), the Guidelines' residual clause is unconstitutionally vague.

_____

harmless given the overwhelming evidence that Little had actual knowledge and intent to exercise control over the firearms. For the same reason, we reject his challenge to the instructions as a whole.

16

United States v. Madrid, 805 F.3d 1204, 1210 (10th Cir. 2015).  This holding applies to the matter before us, which was "pending on direct review" when Johnson and Madrid were decided.  Griffith, 479 U.S. at 328.  As the government concedes, reliance on the residual clause constitutes plain error.  We thus remand for resentencing.

## IV

For the foregoing reasons, Little's convictions are **AFFIRMED**.  We **VACATE** Little's sentence and **REMAND** for resentencing.

No. 15-2019, *United States v. Little*

**HOLMES**, Circuit Judge, dissenting.

I write separately because I dissent from the majority's ultimate resolution of Mr. Little's challenge to the constructive-possession jury instruction. Though I agree with the majority's conclusion that this instruction is legally flawed because it omits the element of intent to exercise control, I respectfully object to the majority's determination that the district court's error in giving this instruction was harmless. Consequently, while the majority would affirm the district court's judgment, I would **reverse** based on the constructive-possession instructional error and **remand** for further proceedings.

More specifically, I would decline to conduct a harmless-error analysis because the government has not made a specific harmless-error argument regarding the constructive-possession instructional error, and the conditions that would ordinarily support sua sponte harmless-error review are not satisfied here. Consequently, I would hold that the district court's error stemming from its allowance of the constructive-possession instruction is reversible error and that the court's judgment therefore cannot stand. I would not definitively opine on the other issues in this case.

Stated with greater particularity, I agree with the majority's conclusion that *Henderson v. United States*, --- U.S. ----, 135 S. Ct. 1780 (2015), constitutes intervening Supreme Court precedent that alters the elements of constructive possession under 18 U.S.C. § 922(g) found in our circuit's precedent: that is,

contrary to the Tenth Circuit decisions that preceded it, *Henderson* makes clear that the government must establish that the defendant had an intent to exercise control over the firearm (or other statutorily proscribed items), not just the power to do so. *See Henderson*, 135 S. Ct. at 1784 ("Constructive possession is established when a person, though lacking . . . physical custody, still has the power *and* intent to exercise control over the object." (emphasis added)). Because the constructive-possession instruction in this case did not include an intent-to-exercise-control component, as *Henderson* requires, I agree with the majority's conclusion that the district court erred in submitting this instruction to the jury and this error was of constitutional magnitude. *See, e.g.*, *Neder v. United States*, 527 U.S. 1, 8 (1999) (noting that a district court errs when it gives "a jury instruction that omits an element of the offense"); *id.* at 12 ("The Government argues, correctly we think, that the absence of a 'complete verdict' on every element of the offense . . . violates the Sixth Amendment's jury trial guarantee.").

Having concluded that the constructive-possession instruction was fatally defective, our court would customarily turn—as the majority does—to the question of whether the error was harmless. *See* Fed. R. Crim. P. 52(a) (providing that an error "that does not affect substantial rights must be disregarded"); *United States v. Wittgenstein*, 163 F.3d 1164, 1169 (10th Cir. 1998) ("Having found that the district court misstated the arrest element of an 8 U.S.C. § 1326 offense, we must assess whether the instruction nevertheless

2

constitutes harmless error."); *see also United States v. Blechman*, 657 F.3d 1052, 1067 (10th Cir. 2011) ("We will not reverse a defendant's conviction on the basis of the district court's erroneous admission of hearsay evidence if the error was harmless to the defendant."). However, ordinarily, "[t]he burden of proving the error was harmless is on the Government." *United States v. Serawop*, 410 F.3d 656, 669 (10th Cir. 2005); *see, e.g.*, *United States v. Lott*, 433 F.3d 718, 723 (10th Cir. 2006) ("Under harmless error review, the government has the burden of proving beyond a reasonable doubt that the constitutional violation did not contribute to the judgment."); *United States v. Summers*, 414 F.3d 1287, 1303 (10th Cir. 2005) ("Under a harmless error analysis, the government bears the burden of demonstrating that the error was harmless beyond a reasonable doubt."). But the government has failed to carry its harmless-error burden here.

The government makes no specific harmless-error argument with respect to the constructive-possession instructional error. I recognize that the government offers some general and cursory assertions that appear to advance the contention that our court should deem errors in *any* of the challenged instructions to be harmless. *See, e.g.*, Aplee.'s Br. at 15 (noting in its "Summary of the Argument" section that, "read together, each of these [challenged] instructions, in the context of the record as a whole, was not misleading, and even if unsupported resulted in only harmless error"). However, these assertions are conclusory and skeletal when applied to the specific circumstances of the jury's consideration of the

3

constructive-possession instruction; in my view, they do not constitute a cognizable harmless-error argument regarding that instruction. *See, e.g.*, *United States v. Faust*, 795 F.3d 1243, 1248 n.4 (10th Cir. 2015) ("Mr. Faust, however, does not elaborate on this bare assertion; thus, we may rightly deem any argument that could be based on it to be waived."); *United States v. Pursley*, 577 F.3d 1204, 1231 n.17, 1232 (10th Cir. 2009) ("Under our precedent, this skeletal reference is insufficient to raise the ex parte/disclosure concern as a discrete appellate issue."); *see also Bronson v. Swensen*, 500 F.3d 1099, 1105 (10th Cir. 2007) ("[T]hese cursory statements, without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to avoid application of the forfeiture doctrine."). Indeed, one could reasonably assert that the government had no intention of presenting a harmless-error argument concerning the constructive-possession instructional error because the government demonstrated at other points in its brief that it knew how to articulate a harmless-error argument when it wanted to do so, *see, e.g.*, Aplee.'s Br. at 32 (devoting a section of its brief to the harmlessness of any error associated with the willful-blindness instruction), but it did not do so regarding the constructive-possession error.

Thus, absent a harmless-error argument from the government regarding the erroneous constructive-possession instruction, the question becomes whether it is appropriate for our court to conduct a harmless-error analysis sua sponte. I answer that question in the negative—*viz.*, it is *not* appropriate. "[T]his court

4

may in its discretion 'initiate harmless error review *in an appropriate case*.'"

*United States v. Samaniego*, 187 F.3d 1222, 1224 (10th Cir. 1999) (emphasis

added) (quoting *United States v. Torrez–Ortega*, 184 F.3d 1128, 1136 (10th Cir.

1999)); *see also United States v. Vanderwerff*, 788 F.3d 1266, 1279 (10th Cir.

2015) (noting that "we have on occasion engaged in harmless-error

analysis—either at the request of a party or, 'in an appropriate case,' *sua sponte*"

(quoting *Samaniego*, 187 F.3d at 1224)).  However, we "should . . . be hesitant to

engage in an 'unsolicited, unassisted, and undirected harmless error review.'"

*United States v. Holly*, 488 F.3d 1298, 1308 (10th Cir. 2007) (quoting *Samaniego*,

187 F.3d at 1225); *cf. United States v. Doe*, 572 F.3d 1162, 1184 (10th Cir. 2009)

(Holmes, J., dissenting) ("The government has failed to argue that the inadequacy

of the information [i.e., the charging document] was harmless error.  While we

may, in certain limited circumstances, conduct a sua sponte harmless error

analysis, it would not be appropriate to do so here."); *United States v. Pryce*, 938

F.2d 1343, 1347 (D.C. Cir. 1991) (Williams, J., announcing judgment of the

panel) ("Where a court analyzes the harmless error issue wholly on its own

initiative, it assumes burdens normally shouldered by government and defense

counsel.  This drain on judicial resources inevitably causes delay for parties in

other cases.").

"In considering whether to do so, we have 'cited with approval three

factors suggested by the Seventh Circuit in determining whether an appellate

5

court should address harmlessness when the government has failed to do so . . . .'" *Mollett v. Mullin*, 348 F.3d 902, 920 (10th Cir. 2003) (quoting *Samaniego*, 187 F.3d at 1225); *see United States v. Giovannetti*, 928 F.2d 225, 227 (7th Cir. 1991). That is, we look to "(1) the length and complexity of the record; (2) whether the harmlessness of the errors is certain or debatable; and (3) whether a reversal would result in protracted, costly, and futile proceedings." *Mollett*, 348 F.3d at 920 (quoting *Samaniego*, 187 F.3d at 1225). "However, 'confusion about what the third factor contributes to the analysis has caused this and other courts to merely reference [the third factor] but not apply it.'" *Id.* (alteration in original) (quoting *Samaniego*, 187 F.3d at 1225 n.2).

The most important of these factors is the second one—i.e., the certainty of harmlessness. *See Holly*, 488 F.3d at 1308 (noting that "it may be appropriate to [apply harmless-error review] where the certainty of the harmlessness is readily apparent"). This factor can be dispositive under certain circumstances. *See United States v. Gonzalez-Flores*, 418 F.3d 1093, 1101 (9th Cir. 2005) ("[T]he second factor—the court's certainty as to the harmlessness of the error—is of particular importance."); *Doe*, 572 F.3d at 1188 (Holmes, J. dissenting) (analyzing only the second factor, i.e., the certainty of harmlessness, because "[t]he most important of the[ ] factors is the certainty of the result"); *see also United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1143 (9th Cir. 2005) (Berzon, J., dissenting in part) ("[T]he touchstone of whether courts should reach

6

harmless error sua sponte is the extent to which the harmlessness of the error is open to question."); *cf. Gover v. Perry*, 698 F.3d 295, 301 (6th Cir. 2012) (noting that "the adoption of [the Seventh Circuit's test] does not mandate that a circuit court review the record before it for harmlessness in every instance, only that it has discretion to do so *when the error is harmless upon review of a clear record*" (emphasis added)). "Evaluation of the certainty of the harmlessness necessarily requires this court to review the record to some extent, though not to the same degree as would be required pursuant to a full harmless error review." *Holly*, 488 F.3d at 1308.

Having reviewed the record, I do not believe that the conditions for conducting a harmless-error review sua sponte are satisfied here. In particular, the harmlessness of the error stemming from the constructive-possession instruction is far from certain or readily apparent; at a minimum, harmlessness could be vigorously debated here. *See Holly*, 488 F.3d at 1308; *Mollett*, 348 F.3d at 920. In other words, the most important condition—the second one—is not satisfied. And, at least under the circumstances here—where I discern no other variables that could materially alter the discretionary calculus, *cf. United States v. Rose*, 104 F.3d 1408, 1415 (1st Cir. 1997) ("While we find helpful the reasoning of the Seventh Circuit, we do not restrict ourselves to [its] test. The exercise of discretion involves the balancing of many elements." (citation omitted))—that conclusion dooms the argument for sua sponte harmless-error review.

7

More specifically, there is little evidence in the record that addresses Mr. Little's intent to exercise control over the firearms and ammunition at issue. As I see it, the only evidence that meaningfully suggests Mr. Little's intent to exercise control was Ms. Blythe's testimony that Mr. Little put a lock on the door to the well house about a week before the police arrived to conduct the search—that is, shortly after the firearms were taken from Southwest Arms—and that he did not give her a key to the lock. *See* R., Vol. VII, at 189 (Test. of Ms. Blythe) (answering "Cody" Little to the question "Who put the lock on that [well house] door?," and stating that he did so "[a]bout a week before the cops showed up"); *id.* at 190 (responding "No" when asked "Did you have a key?"); *cf. United States v. Piwowar*, 492 F.3d 953, 955 (8th Cir. 2007) (discerning an intent to exercise control when there was "evidence [defendant] owned the building where the refrigerator [containing firearms] was located and possessed the sole key to the refrigerator").

However, the testimony of two law-enforcement officers failed to solidly confirm that the lock was on the door at the time of the search. *See* R., Vol. VII, at 62 (Test. of Agent Budrow) (averring "I don't totally recall" a lock on the well house at the time of the search, but "I believe there was"); *id.* at 178 (Test. of Lt. Brackeen) ("I don't recall if that lock was there at that time [of the search] or not."). More importantly, even if there was a lock on the door at the time of the search, the jury heard testimony indicating that Mr. Little did not use it at all

8

times.  Specifically, law-enforcement testimony indicated that the well house door was unlocked when the officers executed the search.  *See id.* at 90 (Test. of Agent Budrow) (averring that the door to the well house "was not locked" at the time of the search); *id.* at 150 (Test. of Sgt. Clark) (testifying that the door to the well house "was unlocked" when the firearms were found).  Such testimony could have diluted in the eyes of a reasonable jury the probative force of the evidence regarding Mr. Little putting a lock on the door because it could have suggested to the jury that Mr. Little was not especially concerned about others—instead of himself—exercising control over the firearms and ammunition.

At bottom, what is clear is that there was scant evidence before the jury that addressed Mr. Little's alleged intent to exercise control over the firearms and ammunition at issue.  Of course, that is not really surprising since the government had no reason to believe that Mr. Little's intent to exercise control would be relevant to this case.  And, the relevant evidence that was presented (e.g., the lock evidence), hardly put the question of Mr. Little's intent to exercise control beyond debate.  Consequently, I cannot conclude that the harmlessness of the constructive-possession instructional error here was certain or readily apparent; therefore, the important second factor does not support sua sponte harmless-error review.  And, at least under the circumstances here, this conclusion is dispositive.  That is, I need not go beyond this second factor.  I conclude that it is inappropriate to conduct harmless-error review sua sponte of the constructive-

9

possession instructional error.

To be sure, after seemingly overlooking the government's failure to argue harmless error, the majority concludes that the constructive-possession instructional error was harmless, primarily by relying on Mr. Little's supposed exclusive control of the well house. However, the majority's harmless-error analysis does not alter my view that the resolution of the harmlessness question is at least debatable and far from certain or readily apparent.

As the majority candidly acknowledges, the cases on which it relies only hold that constructive possession *may* be inferred from a defendant's exclusive control of the premises in which the firearms are found; the cases do not indicate that a defendant's exclusive control of the premises necessitates an inference of constructive possession. *See United States v. Hishaw*, 235 F.3d 565, 571 (10th Cir. 2000) (holding that "the defendant's dominion, control, and knowledge *may* be inferred if he had exclusive possession of the premises on which the object was found" (emphasis added)); *see also United States v. Griffin*, 684 F.3d 691, 695 (7th Cir. 2012) (noting that "if the government demonstrates that the defendant had 'exclusive control' over the property where the contraband was discovered, a jury *may* reasonably infer that he constructively possessed the items, including the contraband, found on that property" (emphasis added)); *United States v. Alanis*, 265 F.3d 576, 592 (7th Cir. 2001) (holding that "constructive possession

10

*may* be established by a showing that the firearm was seized at the defendant's residence" (emphasis added) (quoting *United States v. Walls*, 225 F.3d 858, 867 (7th Cir. 2000))). Moreover, though the majority relies on the "particular facts of this case" to support its conclusion that "there is no reasonable possibility that the jury would have found that Little had knowledge of the weapons at issue but lacked intent to exercise control over them," Maj. Op. at 10, the majority does not identify those particular facts. And such facts are not readily apparent to me.

Indeed, the principal pillar of the majority's harmlessness conclusion—Mr. Little's purported exclusive control of the well house—is far from rock solid. Though Ms. Blythe indicated that she had not been in the well house since "about a week" after Mr. Little's mid-September move-in date, R., Vol. VII, at 184, 190, she acknowledged that she still stored an "ice chest and buckets" there, *id.* at 185. Moreover, though Ms. Blythe testified that Mr. Little put a lock on the door about a week before the search (that is, after the robbery), and did not give her a key, as noted above, there are two weaknesses associated with this testimony: first, there was no evidence to solidly confirm it; and, second, even if her testimony was true, there was evidence indicating that Mr. Little did not use that lock at all times. Furthermore, Ms. Blythe could not rule out the possibility that "people came over to [her] home" when she was away. *Id.* at 208. Accordingly, the evidence of Mr. Little's alleged exclusive control over the well house is not sufficiently firm for me to conclude that it is certain or readily apparent that a

11

reasonable jury would have inferred from it that Mr. Little possessed an intent to exercise control over the firearms and ammunition in the well house.

I need not (and thus do not) definitively opine on whether the government *could have* carried its burden of proving that the district court's constructive-possession instructional error was harmless. The government did not even get out of the starting blocks on the issue; in other words, it did not even attempt to carry its harmless-error burden. Guided by our precedent—including *Samaniego*, *Holly*, and *Mollett*—I have inquired whether it is appropriate for our court to conduct harmless-error review sua sponte. It is not. That is because the harmlessness of the constructive-possession instructional error is at least debatable, and far from certain or readily apparent. Therefore, I would conclude that the district court's omission from its constructive-possession instruction of the element of intent to exercise control is reversible error. Accordingly, I would **reverse** and **remand** the case for further proceedings.[1]

---

[1]    As noted, because I would reverse based on the constructive-possession instructional error, I have no need to definitively opine on Mr. Little's other appellate challenges. However, I pause to observe that, as I read its opinion, the majority is remanding based on *Johnson v. United States*, 135 S. Ct. 2551 (2015), because—like the government—the majority cannot "uncouple the ruling," Aplee.'s Br. at 38, of the district court and determine whether the district court relied on the residual clause because it "did not specify whether [Mr. Little's convictions] were [crimes of violence] because of the elements of the crime, or because of the residual clause," *id.*